■ Frank B. Weber et al., Respondents, v. State of New York, Appellant. (Claim No. 38320.) Frank B. Weber et al., Respondents-Appellants, v. State of New York, Appellant-Respondent. (Claim No. 42230.) — *Per Curiam.* Appeals by the State from judgments of the Court of Claims awarding damages for appropriations of real property in the Town of Oyster Bay for highway purposes; and cross appeal by claimants from one of said judgments. *Claim No. 38320:* We find without merit the State's contention that proof of sales of comparable properties was conclusive as against expert testimony of higher

values; as sales that are "comparable" are just that and proof thereof by no means assumes identical location or identical value. Contrary to the State's assertion, we find in the record no indication that the Trial Judge was influenced by the evidence of values received in other cases or that the evaluations at which he arrived in this case were the result of subjective judgment. The unit values underlying the decision (with one exception, which is immaterial since it favored appellant) are within the range of the testimony and have adequate support in the record and hence would be sustainable; but in the application of those values there appear to have arisen errors in computation to which attention is called. The trial court's evaluation of the business use area amounted to $1.20 per square foot or $228,000, of which $110,000 represented the fee taking of 91,673 square feet. The consequential damage to the business property unappropriated was found to be 30%, which would amount to $0.36 per square foot, and this rate applied to the remaining business area of approximately 98,100 square feet would fix the consequential damage at $35,300, and this amount, plus the awards of $110,000 for land taken and $2,000 for building taken, would produce damage of $147,300; but the damage actually awarded was $163,750. Thus, on the bases of the land areas involved and the unit values found, the damages should have been computed as follows: Before values: Land — business, $228,000; Land — residential, $43,000; Building, $2,000; Total, $273,000. After values: Land — business, $82,700; Land — residential, $43,000; Building, 0; Damage, $147,300,* Total, $273,000. It follows that the award was excessive by $16,450. *Claim No. 42230*: More than two years after the fee appropriations which are the subjects of Claim No. 38320, above discussed, the State formally appropriated the permanent easement for which this claim for damages was interposed. The prior fee takings included a strip of land extending in a generally northeasterly direction from the northerly line of Jericho Turnpike to claimants' easterly property line, thus bisecting the portion of claimant's property zoned for business use; the triangular parcel southeasterly of the strip being appropriated at the same time and the triangular portion northwesterly of the strip remaining to claimants. The strip was appropriated for purposes of, and there was constructed upon it, a service road connecting with the Wantagh-Oyster Bay Expressway, this fee taking being with the express right of access to claimants' lands, which, in fact, abutted the service road, when later constructed, for a distance of 560 feet. The service road was so constructed as to provide ready access to claimants' lands, at the southwesterly corner thereof, by a driveway approximately 20 feet wide. The permanent easement subsequently taken was upon a strip of land extending northerly from that access point along the remaining length of the service road, thus separating the service road from claimants' lands to the northwest. The easement was "for the purpose of constructing, reconstructing and maintaining thereon excavation, embankment and slopes", and, indeed, by *de facto* appropriation, embankments and slopes were constructed prior to the actual appropriation of the easement. The embankment is in some places 10 feet in width and at claimants' request was found by the trial court to be, at some locations, "as much as 4 feet above the grade of claimants' remaining unappropriated land." The appropriation did not specifically provide for access to claimants' lands, as did the prior taking, but there was reserved "to the owner of the property, the right and privilege of using this property providing the exercise of such right and privilege does not, in the opinion of the Superintendent of Public Works, or other authorized representative acting for The People of the State of New York or its assigns, interfere with or prevent the user and exercise

---

* Including consequential damage of $35,300.

of the rights hereinbefore described." The trial court denied consequential damages, finding the actual construction completed within the limits of the permanent easement to be "an indication that the State limits itself to the actually constructed permanent easement and that it does not indicate any intention of interfering with or altering the physical construction made pursuant to the maps herein"; and then held, expressly upon the authority of *Jafco Realty Corp.* v. *State of New York* (18 A D 2d 74, affd. 14 N Y 2d 556), that "if the State should in the future * * * cut off claimants from their access to the accessory road * * * such action will constitute a *de facto* appropriation of claimants' property for which claimants may then bring suit for damages." In our view, *Jafco* is not in point. In that case the State appropriated, for purposes of the Thruway, the fee of lands owned by the City of Buffalo, over which claimant possessed an easement, granted to it by the city, of ingress to and egress from other property owned by it; the State in its appropriation, however, reserving to claimant the easement rights granted to it by the City of Buffalo, with a proviso, similar to that now before us, that the exercise of those rights should not interfere with the public use described in the appropriation. Upon construction of the Thruway, claimant's easement was preserved physically unimpaired, except as limited vertically to 22 feet where the road passed under the Thruway. The Court of Appeals agreed that the provision "reserving" claimant's rights "effected a reservation of the easement granted to the claimant's predecessor in interest by the City of Buffalo and it follows that, if the State later interferes with the claimant's access to its waterfront property, the State will have to answer for a *de facto* appropriation." (14 N Y 2d 556, 557.) Thus, *Jafco* dealt with an affirmative, preexisting easement derived by grant from the city and, under the terms of the appropriation as construed by the Appellate Division, "The State * * * had no right to cut off the claimants' access". (18 A D 2d 74, 77.) In the case before us, the State, in effect, *appropriated* the very right to deprive claimants of the access to the service road conferred upon them by operation of law, this being the effect of its right to construct and maintain "excavation, embankment and slopes." (*Morton* v. *State of New York*, 8 A D 2d 49, app. dsmd. 6 N Y 2d 993, mot. for lv. to app. den. 7 N Y 2d 708; *Spinner* v. *State of New York*, 4 A D 2d 987.) In *Jafco* the appropriation preserved the right; in *Morton* and in the case before us the appropriation, in effect, extinguished it. We find, then, that this case is not to be governed by *Jafco* but, rather, by *Morton* and *Spinner*, in each of which cases the permanent easement appropriation was in language substantially similar to that now before us; as was the wording of the reservation in favor of the owner in the *Spinner* case, as appears from the record on appeal. In *Morton* we found that "the State has the right to take such action as would effectively deny access to the service road" (8 A D 2d 49, 52) and in *Spinner* that "the State had the right to block access to the claimants' property completely by building an embankment of considerable height on the easement strip" (4 A D 2d 987, 988). It followed, in each case, that damage was to be determined on the basis of what the State had a right to do, which, in the construction given the reservation, in the light of the existent factual situation, was not greatly limited; while in *Jafco* the pre-existing and specifically recognized and continued easement was not immediately affected (except with respect to a vertical limitation at one point) and, again by judicial construction in the light of the legal and factual status of the easement as preserved and continued, it was found that the State had no right to interfere with it and that future interference would give rise to a *de facto* appropriation with consequent liability for damage. Thus, *Jafco* differs

from *Morton* and *Spinner* not on the general principle that damages are to be determined in view of what the State has a *right* to do, but rather in its conclusion as to just what right the State had in fact acquired under the easement in each instance involved. It follows, then, that in the case before us, claimants are entitled to recover consequential damages representing diminution in the value of their unappropriated lands caused by the denial of access to and from the service road for all but 20 feet of its 560-foot length. As respects direct damages, those awarded upon this claim were approximately $2,000 in excess of the expert opinion evaluation most favorable to claimants. These same unappropriated lands were, of course, affected by the prior taking for which Claim No. 38320, above discussed, was made and we have found that their value was depreciated by the prior taking. The elements of the damage flowing from the two appropriations are closely interrelated and there would exist the possibility of duplicative, or at least inconsistent awards, were we to modify and affirm the judgment upon Claim No. 38320 and remit Claim No. 42230 alone for retrial; and, additionally, the interests of all parties would seem to be promoted by retrial of both cases with each side prepared to adduce proof under the same rule of damage. Judgments reversed, on the law and the facts, and, additionally as respects the judgment upon Claim No. 38320 in the interests of justice, and a new trial ordered, without costs. Gibson, P. J., Herlihy, Taylor, Aulisi and Hamm, JJ., concur.